**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. LUMINA PEAK PARTNERS, LLC<br><br>Plaintiff/Relator,<br><br>v.<br><br>UNITED SECURITY, INC.,<br><br>Defendant. | Civil Action No. ____________<br><br>JURY TRIAL DEMANDED<br><br>FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 |

RECEIVED
SEP 10 2026
AT 8:30 M
CLERK, U.S. DISTRICT COURT - DNJ

## COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT

Lumina Peak Partners, LLC ("**Relator**"), as Plaintiff-Relator, on behalf of the United States of America, brings this action against United Security, Inc. ("**Defendant**") under the qui tam provisions of the False Claims Act, 31 U.S.C. § 3729 et seq., and alleges as follows:

## I. PARTIES

1. Defendant United Security, Inc. is a New York corporation with its registered address at 40 Shrewsbury Avenue, Red Bank, New Jersey 07701. Defendant was classified under North American Industry Classification System[1] ("**NAICS**") code 561612 (Security Guards and Patrol Services).

2. Relator is a limited liability company organized under the laws of Wyoming, with its principal place of business at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801.

## II. NATURE OF THE ACTION

3. In 2020, when faced with a potential recession, Congress found that small businesses were some of the hardest hit by the economic downturn, and most likely to lay off

---

[1] The NAICS is a standard six-digit coding system used by the U.S., Canada, and Mexico to classify business entities by their economic activity.

workers. Therefore, Congress sought to initiate a program to help small businesses continue to employ ordinary Americans. The Paycheck Protection Program (“**PPP**”) that resulted was passed as part of the Coronavirus Aid, Relief, and Economic Security (“**CARES**”) Act. To ensure the PPP funds would support the small businesses that Congress was concerned with, the CARES Act mandated that the U.S. Small Business Administration (“**SBA**”) implement standards for what sized entities were eligible for PPP loans. There were three separate pathways to eligibility. First, a company with less than 500 employees was eligible by statute. Second, if a company had greater than 500 employees, it was still eligible if it qualified as a small business concern under SBA regulations, which varied by industry. Third, if the company did not meet its specific industry standards to be a small business concern, it was still eligible under the alternative SBA size standard if its tangible net worth was no more than $15 million and the net income was no more than $5 million in the preceding two years.

4. Relator brings this as a qui tam action seeking recovery on behalf of the United States for more than $7,655,207.21 in PPP funds that Defendant fraudulently obtained from the government. Defendant could not satisfy any of the three size pathways established by the CARES Act and the SBA. Nevertheless, Defendant applied for and fraudulently received a PPP loan. Thereafter, Defendant failed to repay that loan and instead fraudulently obtained forgiveness for that loan.

5. Relator now seeks treble damages of at least $22,965,621.63 on behalf of the United States, plus civil penalties.

## II. PARTIES

6. Defendant United Security, Inc. is a New York corporation with its registered address at 40 Shrewsbury Avenue, Red Bank, New Jersey 07701. Defendant was classified under

North American Industry Classification System[2] ("**NAICS**") code 561612 (Security Guards and Patrol Services).

7. Relator is a limited liability company organized under the laws of Wyoming, with its principal place of business at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801.

## III. COMPLIANCE WITH PLEADING REQUIREMENTS

8. This action is filed under seal pursuant to 31 U.S.C. § 3730(b). A filed copy of this Complaint, any Sealing Order, and Relator's disclosure of substantially all material evidence and information will be served on the Attorney General of the United States and the United States Attorney for the District of New Jersey.

9. Relator will not serve this Complaint or any other papers on Defendant until and unless the action becomes unsealed.

## IV. JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a), which provide that a civil action under the False Claims Act may be brought in any judicial district in which the defendant can be found, resides, transacts business, or in which any act proscribed by § 3729 occurred.

11. Venue is proper because Defendant transacts business in this District; because Defendant's principal place of business is in Red Bank, Monmouth County, New Jersey, which is within the District of New Jersey; and because a substantial part of the events giving rise to these claims, including Defendant's PPP application listing a borrower address as 40 Shrewsbury

---

[2] The NAICS is a standard six-digit coding system used by the U.S., Canada, and Mexico to classify business entities by their economic activity.

Avenue, Red Bank, New Jersey 07701, its eligibility certification, receipt of loan proceeds, and forgiveness application, occurred in this District. 31 U.S.C. § 3732(a); 28 U.S.C. § 1391(b)(2).

## V. BACKGROUND

*The Paycheck Protection Program*

12. Beginning in early 2020, the response to the COVID-19 pandemic caused unprecedented economic disruption across the United States.

13. To alleviate economic hardship, Congress enacted the CARES Act, which established the PPP to provide forgivable loans to eligible small businesses to maintain payroll and cover certain operating expenses.

14. PPP loans were guaranteed by the SBA and funded through private lenders. Upon a borrower's demonstration of eligible use of funds, the SBA would forgive the loan principal and accrued interest, paying the lender from federal funds.

15. To obtain a PPP loan, an applicant was required to submit SBA Form 2483 (Borrower Application Form) or a lender-equivalent form. The applicant's authorized representative was required to certify, among other things, that "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted."

16. After receiving and using PPP funds, a borrower could apply for forgiveness by submitting SBA Form 3508, 3508EZ, or 3508S.

17. Whether the Federal government would forgive a company's PPP loan was evaluated in accordance with the PPP regulations and guidance issued by SBA.

18. If approved, the federal government satisfied the borrower's loan obligation to the lender. If SBA determined that the recipient was ineligible for the PPP loan at the time it was

granted or at the time of the request for forgiveness, SBA could direct the lender to disapprove the forgiveness application.

*Eligibility Standards*

19. At the time of Defendant's PPP loan application, eligibility could only be established through one of three pathways: (i) Defendant employed no more than 500 employees; (ii) Defendant qualified as a "small business concern" under the SBA size standard assigned to its NAICS code; or (iii) Defendant qualified under SBA's alternative size standard.

20. For the employee-count pathway, an "eligible recipient" included a business concern that "employs not more than ... 500 employees." 15 U.S.C. §§ 636(a)(36)(A)(iv) and 636(a)(36)(D)(i)(II). An "employee" included all individuals "employed on a full-time, part-time, or other basis." 15 U.S.C. § 636(a)(36)(D)(v).

21. In 2020, for employee-count eligibility, the number of employees was measured by the average number of employees for each pay period during the preceding 12 months before the date of the PPP application, after aggregating affiliated entities. 13 C.F.R. § 121.106(b).

22. A business that did not satisfy the employee-count pathway could still be eligible to receive a PPP loan if it qualified as a "small business concern" under the applicable SBA industry size standard or under SBA's alternative size standard. 15 U.S.C. §§ 636(a)(36)(D)(i) and 637(d)(3); 13 C.F.R. §§ 121.201 and 121.301(b)(2).

23. In 2020, for entities with Defendant's NAICS code 561612, the SBA set the industry size standard at a limit of $22 million in annual receipts over the preceding five years. 13 C.F.R. §§ 121.201 & 121.104.

24. The SBA established an alternative size standard, which provided eligibility for companies that did not meet their specific industry's size standard requirements.

25. To meet the SBA's alternative size standard in 2020, a company could not have net worth over $15 million as of the date of the application and not more than $5 million in net income in either of the preceding two years. 13 C.F.R. § 121.301(b)(2).

26. Accordingly, a company assigned NAICS code 561612, such as Defendant, was eligible for a First Draw PPP loan if it: (i) had no more than 500 employees; (ii) had less than $22 million in gross revenue; or (iii) had a net worth of less than $15 million or net income of less than $5 million over the preceding two years.

27. SBA Form 2483 required each applicant's authorized representative to certify that "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA)[.]"

28. It further required certification that the company "employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."

29. Then SBA Form 2438 required, on the same page as the applicant's authorized representative's signature, the representative to initial next to the statement: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

30. On information and belief, the private lender forms included the same or similar certifications.

## VI. DEFENDANT'S PPP LOAN AND FORGIVENESS

31. On or about July 28, 2020, Defendant applied for and received an SBA PPP loan, Loan Number 9327498109, in the amount of $7,589,707, made through Manufacturers and Traders Trust Company.

32. Defendant's PPP loan was based on Defendant's certification, on the SBA Form 2438 or a private lender equivalent, that it satisfied the applicable PPP rules, including the applicable SBA size standards.

33. As explained in more detail below, Relator alleges that Defendant did not satisfy any applicable PPP size-eligibility option, making Defendant ineligible for the PPP loan and ineligible for forgiveness of that loan. Consequently, Defendant's general eligibility certifications submitted on the relevant PPP application and forgiveness forms were false.

34. Upon information and belief, Defendant did not qualify for the PPP loan through the employee-count pathway because Defendant employed more than 500 employees during the applicable period.

35. Upon information and belief, Defendant did not qualify for the loan through the receipts-based pathway because its average annual receipts exceeded the $22 million industry size standard.

36. Upon information and belief, Defendant did not qualify under the SBA's alternative size standard because, its maximum tangible net worth exceeded $15 million as of the date of the application and its average net income after federal taxes exceeded $5 million in the two years preceding the application.

37. Furthermore, because Defendant was ineligible for the PPP loan in the first place, it should not have received forgiveness of its loan.

38. Nevertheless, Defendant submitted a loan forgiveness application despite being ineligible and in doing so Defendant made or caused to be made false claims to the United States for forgiveness of PPP Loan Number 9327498109 in the amount of $7,655,207.21, including the

principal balance and accrued interest. On or about June 11, 2021, that application was granted based on the false representations submitted by Defendants.

## VII. DEFENDANT WAS INELIGIBLE BASED ON SIZE STANDARDS

*Statutory Employee Count Path*

39. Defendant reported 500 employees in connection with PPP Loan Number 9327498109.

40. The following chart shows the number of employees Defendant had during the relevant years according to PrivCo[3]:

| YEAR | EMPLOYEES |
|---|---|
| 2018 | 1,200 |
| 2019 | 1,224 |
| 2020 | 1,102 |
| 2021 | 1,168 |

41. Public Form 5500 ("**F5500**") is a form created by the U.S. Department of Labor, Internal Revenue Service, and the Pension Benefit Guaranty Corporation to allow employee benefit plans to satisfy annual reporting requirements mandated by Title I and Title IV of ERISA and under the Internal Revenue Code. Among other information, the number of participants in an employee benefit plan was required to be reported on a company's F5500. This is not an exact employment count, as many employees may not be eligible for or participate in benefit plans offered by their employer.

42. Per its F5500 data, Defendant's Welfare Benefit Plan (Plan No. 505) reported the following number of active participants during the relevant years:

| YEAR | PARTICIPANTS |
|---|---|
| 2019 | N/A |

[3] PrivCo is a leading private market intelligence company. PrivCo's proprietary data covers more than 760,000 U.S. company profiles, including 95% coverage of U.S. private companies with $10 million or more in revenue. Founded in 2009, PrivCo serves more than 100,000 firms, investors and financial advisors.

| | |
|---|---|
| **2020** | 1,168 |
| **2021** | 744 |

43. Even though it is now six years past the relevant period, Defendant's number of employees has remained above 500, further lending credence to the foregoing employee numbers. Defendant's current website indicates it has more than 1,500 employees. *See* https://perma.cc/J9VS-Y528. This figure has remained unchanged since the website was captured in an August 14, 2020 archive of the page. *See* https://web.archive.org/web/20200814112929/https://usisecurity.com/history/.

44. Defendant's current public LinkedIn page states the company size is between 1,001 and 5,000 employees.

*SBA Industry Size Standard Path*

45. According to PrivCo, Defendant had the following gross revenues:

| YEAR | REVENUE |
|---|---|
| **2017** | $150 million |
| **2018** | $160 million |
| **2019** | $165 million |
| **2020** | $150 million |

In the years leading up to the loan application, Defendant consistently had gross receipts well above the $22 million cap for the SBA industry size standard for NAICS code 561612.

*SBA Alternative Size Standard Path*

46. According to PrivCo, Defendant's annual net income has consistently been greater than $5 million:

| YEAR | EBITDA | NET INCOME |
|---|---|---|
| **2017** | $22.51 million | N/A |
| **2018** | $25.27 million | N/A |
| **2019** | $28.96 million | N/A |
| **2020** | $21.53 million | N/A |
| **2021** | $25.52 million | $18 million |
| **2022** | $25.49 million | $18 million |

| | | |
|---|---|---|
| **2023** | $24.5 million | $17 million |
| **2024** | $24 million | $17 million |
| **2025** | $25.5 million | $17.5 million |

While net income information is not available for the two years preceding its PPP loan application, Earnings Before Interest, Taxes, Depreciation, and Amortization ("**EBITDA**") has remained consistent throughout and since the relevant timeframe with net income greater than $5 million per year.

47. According to PrivCo, Defendant's 2020 valuation was approximately $125 million, which is evidence that Defendant's net worth was greater than $15 million.

48. Upon information and belief, Defendant had net income above $5 million in at least one of the two years preceding the loan application and had a tangible net worth of greater than $15 million at the time of the loan application, making it ineligible under the SBA's alternative size standard.

49. Accordingly, upon information and belief, Defendant exceeded the statutory size limit of 500 employees, the SBA industry size standard based on its NAICS code, and the SBA alternative size standard and, thus, was ineligible for the PPP loan and forgiveness of that loan.

## VIII. FALSE CERTIFICATIONS

50. Defendant was or should have been aware of the accurate figures for its relevant employee count, its annual revenue, and its net worth, and that each of those values exceeded the relevant standards set by the SBA.

51. By submitting its PPP Borrower Application, Defendant certified that it was "eligible to receive a loan under the rules in effect at the time this application is submitted." That certification was knowingly false.

52. Likewise, by submitting its loan forgiveness application, Defendant certified that the information provided in this application and the information provided in all supporting documents and forms is "true and correct in all material respects."

53. As part of the forgiveness application, Defendant further acknowledged understanding that the "SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan" and "if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges."

54. As a direct result of these false certifications, Defendant caused the disbursement of $7,589,707 in PPP funds for which it was ineligible and subsequently received forgiveness of $7,655,207.21, including the principal balance and accrued interest, again for which it was ineligible.

## IX. MATERIALITY AND SCIENTER

55. Defendant's knowingly false eligibility certifications were material to the Government's payment decisions. PPP eligibility under the applicable size standards was a threshold requirement: the SBA would not have permitted the disbursement of the loan, nor would it have forgiven the balance had Defendant truthfully disclosed that it exceeded the applicable size standards.

56. The SBA consistently treated the applicable size standards as mandatory eligibility requirements for PPP loans. The SBA would not knowingly have guaranteed or forgiven a loan to an entity that exceeded the applicable size standards.

57. Defendant acted "knowingly" within the meaning of 31 U.S.C. § 3729(b)(1), that is, with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the certifications.

58. Defendant and its authorized agents knew or recklessly disregarded the number of employees it employed, knew its revenue, knew or recklessly disregarded its net worth and net income, and knew or recklessly disregarded that Defendant exceeded the applicable SBA size standards for PPP purposes.

## X. DAMAGES

59. As a direct and proximate result of Defendant's false claims and false statements, the United States suffered damages of at least $7,655,207.21 in forgiven loan principal and accrued interest, plus any applicable lending fees, all paid by the United States.

60. Under 31 U.S.C. § 3729(a)(1), the United States is entitled to recover treble damages of no less than $22,965,621.63 arising from Defendant's PPP loan disbursement and forgiveness application.

## XI. FALSE CLAIMS ACT VIOLATIONS

61. An entity violates the False Claims Act when it "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). A claim is "false or fraudulent" if the entity submitting the claim was not entitled to payment and the misrepresentation was material to the Government's payment decision. The FCA further imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

**COUNT ONE**
**Presenting a False Claim**
**31 U.S.C. § 3729(a)(1)(A)**

62. Relator re-alleges and incorporates by reference all paragraphs 1 through 61 as if fully set forth herein.

63. On or about July 28, 2020, Defendant made or caused to be made a false claim to the United States to receive First Draw PPP funds by submitting a Borrower Application Form for Loan Number 9327498109.

64. On the Borrower Application Form Defendant falsely claimed, or caused to be claimed, that it qualified for a PPP loan pursuant to the relevant SBA size standards, when it knew that it did not qualify for a PPP loan under any of the SBA standards.

65. In submitting the fraudulent Borrower Application Form, Defendant acted knowingly, with actual knowledge of the falsity, or in deliberate ignorance or reckless disregard of the truth or falsity of the claims made in the Form.

66. The fraudulent statements made by Defendant in the Borrower Application Form formed the basis of, and therefore were material to, the SBA's decision to grant Defendant's First Draw PPP loan.

67. The United States paid, or caused to be paid, to Defendant $7,589,707 in federally guaranteed PPP loan proceeds it would not otherwise have paid due to Defendant's actions.

68. As a result of the foregoing, the United States suffered, and continues to suffer, damages in an amount to be determined at trial but not less than $7,589,707, and pursuant to 31 U.S.C. § 3729(a)(1), the United States is entitled to recover treble damages from Defendant in the amount of $22,769,121, along with Relator's reasonable attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d), pre-judgment and post-judgment interest, and all other damages available to it by statute or common law.

**COUNT TWO**
**Presenting a False Claim**
**31 U.S.C. § 3729(a)(1)(A)**

69. Relator re-alleges and incorporates by reference all paragraphs 1 through 61 as if fully set forth herein.

70. On or about June 11, 2021, Defendant made or caused to be made false claims to the United States for forgiveness of its First Draw PPP Loan Number 9327498109 in the amount of $7,655,207.21, including the principal balance and accrued interest, by submitting a loan forgiveness application despite being ineligible.

71. On the loan forgiveness application, Defendant falsely claimed, or caused to be claimed, that it qualified for a PPP loan forgiveness, pursuant to the relevant statutory and SBA size standards, when it knew that it did not qualify for a PPP loan.

72. In submitting the fraudulent forgiveness application, Defendant acted knowingly, with actual knowledge of the falsity, or in deliberate ignorance or reckless disregard of the truth or falsity of the claims made.

73. The fraudulent statements made by Defendant in the loan forgiveness application formed the basis of, and therefore were material to, the SBA's decision to grant forgiveness of Defendant's PPP loan.

74. The United States paid, or caused to be paid, on Defendant's behalf, $7,655,207.21 in federally guaranteed PPP loan proceeds it would not otherwise have paid due to Defendant's actions.

75. As a result of the foregoing, the United States suffered, and continues to suffer, damages in an amount to be determined at trial but not less than $7,655,207.21, and pursuant to 31 U.S.C. § 3729(a)(1), the United States is entitled to recover treble damages from Defendant in the amount of $22,965,621.63, along with Relator's reasonable attorneys' fees, costs, and expenses

pursuant to 31 U.S.C. § 3730(d), pre-judgment and post-judgment interest, and all other damages available to it by statute or common law.

**COUNT THREE**
**Making or Using a False Statement Material to a False Claim**
**31 U.S.C. § 3729(a)(1)(B)**

76. Relator re-alleges and incorporates by reference all paragraphs 1 through 61 as if fully set forth herein.

77. On or about July 28, 2020, Defendant made and used, or caused to be made and used, false statements by falsely certifying eligibility on SBA Form 2483 or a lender equivalent for Loan Number 9327498109, thereby causing the disbursement of $7,589,707 in federally guaranteed PPP loan proceeds.

78. On the Borrower Application Form Defendant falsely claimed, or caused to be claimed, that it qualified for a PPP loan pursuant to the relevant statutory and SBA size standards, when it knew that it did not qualify for a PPP loan under any of the SBA.

79. In submitting the fraudulent Borrower Application Form, Defendant acted knowingly, with actual knowledge of the falsity, or in deliberate ignorance or reckless disregard of the truth or falsity of the claims made in the Form.

80. The fraudulent statements made by Defendant in the Borrower Application Form formed the basis of, and therefore were material to, the SBA's decision to grant Defendant's First Draw PPP loan.

81. The United States paid, or caused to be paid, to Defendant $7,589,707 in federally guaranteed PPP loan proceeds it would not otherwise have paid due to Defendant's actions.

82. As a result of the foregoing, the United States suffered, and continues to suffer, damages in an amount to be determined at trial but not less than $7,589,707, and pursuant to 31 U.S.C. § 3729(a)(1), the United States is entitled to recover treble damages from Defendant in the

amount of $22,769,121, along with Relator's reasonable attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d), pre-judgment and post-judgment interest, and all other damages available to it by statute or common law.

**COUNT FOUR**
**Making or Using a False Statement Material to a False Claim**
**31 U.S.C. § 3729(a)(1)(B)**

83. Relator re-alleges and incorporates by reference all paragraphs 1 through 61 as if fully set forth herein.

84. On or about June 11, 2021, Defendant made and used, or caused to be made and used, false statements on its Loan Forgiveness Application, including certifications of eligibility, thereby causing the forgiveness of PPP Loan Number 9327498109 in the amount of $7,655,207.21, including the principal balance and accrued interest.

85. On the loan forgiveness application, Defendant falsely claimed, or caused to be claimed, that it qualified for a PPP loan forgiveness, pursuant to the relevant statutory and SBA size standards, when it knew that it did not qualify for a PPP loan.

86. In submitting the fraudulent forgiveness application, Defendant acted knowingly, with actual knowledge of the falsity, or in deliberate ignorance or reckless disregard of the truth or falsity of the claims made.

87. The fraudulent statements made by Defendant in the loan forgiveness application formed the basis of, and therefore were material to, the SBA's decision to grant forgiveness of Defendant's PPP loan.

88. The United States paid, or caused to be paid, on Defendant's behalf, $7,655,207.21 in federally guaranteed PPP loan proceeds it would not otherwise have paid due to Defendant's actions.

89. As a result of the foregoing, the United States suffered, and continues to suffer, damages in an amount to be determined at trial but not less than $7,655,207.21, and pursuant to 31 U.S.C. § 3729(a)(1), the United States is entitled to recover treble damages from Defendant in the amount of $22,965,621.63, along with Relator's reasonable attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d), pre-judgment and post-judgment interest, and all other damages available to it by statute or common law.

## XII. RELIEF SOUGHT

90. On behalf of the United States, Relator respectfully requests that this Court enter judgment against Defendant and in favor of the United States as follows:

a. Treble damages under 31 U.S.C. § 3729(a)(1) in an amount to be determined at trial, including no less than $22,965,621.63 arising from Defendant's PPP loan disbursement and forgiveness;

b. Civil penalties as provided by 31 U.S.C. § 3729(a)(1), as adjusted for inflation, for each false claim and false statement;

c. An award to Relator of the maximum percentage allowed under 31 U.S.C. § 3730(d);

d. Relator's reasonable attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d);

e. Prejudgment and post-judgment interest; and

f. Such other and further relief as this Court deems just and proper.

## XIII. JURY DEMAND

91. Relator demands a trial by jury on all claims and issues so triable.

Date: September 10, 2026

Respectfully submitted,

*/s/ Jack Spitz*
**SIRI & GLIMSTAD LLP**
Jack Spitz
New Jersey Bar No. 248632019
8 Campus Drive
Suite 105 PMB#161
Parsippany, NJ 07054
Tel: (888) 747-4529
Fax: (646) 417-5967
jspitz@sirillp.com

*/s/ Charles D. Strauss*
**SIRI & GLIMSTAD LLP**
Charles D. Strauss
Louisiana Bar No. 36039*
201 St. Charles Ave.
Suite 2500 (#17193999)
New Orleans, LA 70170
Tel: (888) 747-4529
Fax: (646) 417-5967
cstrauss@sirillp.com
**Pro hac vice request forthcoming*

*Attorneys for Relator,*
*Lumina Peak Partners, LLC*